IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

LOSARO SANDOVAL, JR.　　　　§
a/k/a Lasaro J. Sandoval,　　　　§
　　　　　　　　　　　　　　　§
　　　Petitioner,　　　　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　§　　　2:19-CV-145-Z-BR
　　　　　　　　　　　　　　　§
DIRECTOR, TDCJ-CID,　　　　　§
　　　　　　　　　　　　　　　§
　　　Respondent.　　　　　　§

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**

　　　Losaro Sandoval, Jr., a/k/a Lasaro J. Sandoval ("Petitioner") filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 181st District Court of Potter County, Texas for the first-degree felony offense of aggravated assault on a public servant using a deadly weapon (enhanced by two prior felony convictions) and the resultant fifty-year sentence. For the reasons set forth below, the undersigned United States Magistrate Judge recommends that Petitioner's application for federal habeas corpus relief under Section 2254 of Title 28 of the United States Code be DENIED.

## I.　　　FACTUAL BACKGROUND

　　　The Seventh Court of Appeals clearly summarized the factual background of this case in its June 27, 2013 Memorandum Opinion:

> 　　　During the afternoon hours of August 4, 2004, a female called 911 to report that her boyfriend had locked himself in a park restroom and threatened to cut his wrists. He had just consumed a large amount of prescription antidepressants after arguing with his girlfriend. The first officers to arrive were Officer Brett Thomas and Bob Snyder. They were informed that Appellant had a pocket knife. Three other officers arrived on the scene. According to Officer Thomas's testimony, he tried to communicate with Appellant to assess his condition and get him help.[1] He obtained

a key to the restroom from a park attendant but his attempt to unlock the door was thwarted by Appellant. Officer Snyder walked to the back of the building where he was able to look through a small opening and observe that Appellant was holding the door shut.

In an attempt to back Appellant away from the door, Officer Snyder stood on top of a garbage can and deployed his Taser through the small opening. He struck Appellant in the back but the Taser probes did not make full contact with Appellant's skin and he did not go down.[2] He was, however, pushed to the back wall and away from the door allowing officers to open it. Officer Thomas testified that Appellant lunged toward him holding a large folding pocket knife in his left hand,[3] raised above his head "in a stabbing type motion." Officer Thomas announced that Appellant had a knife and he and the other officers shoved the door open and pinned Appellant behind it. Appellant was still holding the knife, although it was now down by his leg. Officer Thomas reached around the door and deployed his Taser. Appellant hit the ground and released the knife.

Paramedics were allowed in once the scene was secured and Appellant was placed on a gurney and handcuffed. He was taken to the hospital and after a few days was released to his girlfriend. At a later date, he and his girlfriend went to the police station to report that his vehicle had been stolen and it was then that Appellant was advised there was an outstanding arrest warrant for him for aggravated assault. He was arrested and charged with threatening Officer Thomas, a public servant, with imminent bodily injury while using or exhibiting a knife as a deadly weapon.

The other officers who responded to the scene all testified at Appellant's trial.[4] For the most part, their testimony echoed Officer Thomas's testimony.

---

[1] Officer Thomas and other officers testified that when dispatched to a suicide call, their objective is to check on the person's welfare and safety, especially in this case where they had been advised that Appellant had already overdosed on prescription medication.

[2] According to testimony, when a taser's trigger is deployed, two probes discharge from a cartridge. If both probes strike the subject's skin, his neuromuscular system is momentarily locked down. The desired effect is successful only if both probes make contact. If full contact is not made, there may still be an electrical shock, but the neuromuscular system does not shut down.

[3] During his testimony, Appellant described the knife as a buck knife that he carried in a case on his side, not in his pocket.

[4] Two of the officers were no longer with the police department at the time of trial.

(ECF 12-7 at 2–3); *Sandoval v. State*, No. 07-11-00136-CR, 2013 WL 3355711, at *1–*2 (Tex. App.—Amarillo June 27, 2013) (mem. op., not designated for publication).

## II.    <u>PROCEDURAL HISTORY</u>

Petitioner was charged by Indictment in Potter County, Texas with the first-degree felony offense of aggravated assault on a public servant using a deadly weapon for the above-referenced August 4, 2004 incidents, with enhancements for two prior felony convictions. (ECF 12-13 at 10); *see State v. Sandoval*, No. 49,915-B; Tex. Penal Code Ann. § 22.02(a)(2), (b)(2)(B) (West 2003). The indictment alleged that on August 4, 2004, Petitioner:

> intentionally or knowingly threaten[ed] [Officer Thomas] with imminent bodily injury, and did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury, during the commission of said assault and [Petitioner] knew [Officer Thomas] was a public servant, to-wit: an Amarillo, Texas police Officer, and [Officer Thomas] was lawfully discharging an official duty.

(ECF 12-13 at 10). The indictment further alleged that Petitioner had two prior felony convictions, for purposes of enhancing the range of punishment under Section 12.42 of the Texas Penal Code: the first on September 3, 1996 in Randall County, Texas for unlawfully carrying a weapon on school premises; and the second on July 14, 2000 in Potter County, Texas for unlawful possession of a firearm by a felon. (*Id.*); *see State v. Sandoval*, Nos. 8920-B; 42,521-E; Tex. Penal Code Ann. § 12.42(d) (West 2003).

On October 19, 2004, trial counsel was appointed to represent Petitioner. (ECF 12-13 at 8). Petitioner's case was called for a jury trial on November 14, 2005. (*Id.* at 40). Petitioner pleaded not guilty. (*Id.*). On November 17, 2005, after the conclusion of the guilt/innocence phase of the trial, the jury found Petitioner guilty of the first-degree felony offense of aggravated assault on a public servant using a deadly weapon, as alleged in the Indictment. (*Id.* at 40–41). After hearing evidence on punishment, the jury found the punishment enhancements to be true and sentenced Petitioner to confinement for a period of fifty years in the Texas Department of Criminal Justice— Correctional Institutions Division. (*Id.* at 41–42).

On November 18, 2005, appellate counsel was appointed to represent Petitioner. (ECF 12-13 at 37, 39). On November 29, 2005, the trial court entered a Judgment, which stated that Petitioner did not wish to appeal the case. (*Id.* at 42; *see id.* at 92–93).

On May 16, 2006, the Seventh Court of Appeals entered an Order of Dismissal, which stated that although Petitioner had inquired about the status of his appeal, "no notice of appeal . . . was ever filed[.]" (*Id.* at 89–91). As such, the appeal was dismissed. (*Id.*); *Sandoval v. State*, No. 07-06-0187-CR, 2006 WL 1329694, at *1 (Tex. App.—Amarillo May 16, 2006) (not designated for publication). On March 9, 2011, the Texas Court of Criminal Appeals ("TCCA") granted Petitioner habeas relief and allowed him to file an out-of-time appeal. (*See* ECF 12-6 at 7–9; ECF 12-9 at 2). On April 8, 2011, the trial court appointed new appellate counsel to represent Petitioner. (ECF 12-8 at 2; ECF 12-13 at 215).

Petitioner then filed a direct appeal of his conviction and sentence to the Court of Appeals for the Seventh District of Texas. (*See* ECF 12-12 at 1–23; ECF 12-11 at 1–16; ECF 12-10 at 1–12). On June 27, 2013, the Seventh Court of Appeals affirmed[1] the judgment of the trial court. (ECF 12-7 at 1–7; ECF 12-2 at 1); *Sandoval v. State*, No. 07-11-00136-CR, 2013 WL 3355711, at *1–*2 (Tex. App.—Amarillo June 27, 2013, pet. ref'd) (mem. op., not designated for publication).

Petitioner submitted an out-of-time, *pro se* Petition for Discretionary Review of the Seventh Court of Appeals' judgment to the TCCA on November 17, 2017. (ECF 12-33 at 1–2; ECF 12-4 at 1–20); *see Ex parte Sandoval*, No. WR-69,178-03, 2017 WL 4160988, at *1 (Tex. Crim. App. Sept. 20, 2017) (not designated for publication). The TCCA refused Petitioner's

---

[1] The Seventh Court of Appeals' Memorandum Opinion also modified the trial court's judgment "by deleting any requirement that Appellant reimburse the State the sum of $3,100 for court-appointed attorney's fees and by adding the following provision: 'As used herein the term "court costs" does not include court appointed attorney's fees.'" (ECF 12-7 at 7; *see* ECF 12-2 at 1).

4

Petition for Discretionary Review on January 24, 2018. (ECF 12-1 at 1); *Sandoval v. State*, No. PD-1148-17 (Tex. Crim. App. Jan. 24, 2018) (per curium). Petitioner did not seek review of that decision by filing a petition for writ of certiorari with the United States Supreme Court.

Petitioner also sought collateral review of his conviction and sentence by filing a petition for state habeas corpus relief on January 28, 2019. (ECF 12-36 at 5–48; ECF 12-37 at 1–36; ECF 12-38 at 1–49). On April 24, 2019, the TCCA denied Petitioner's state habeas application on the merits without written order. (ECF 12-35 at 1); *In re Sandoval*, No. WR-69,178-04 (Tex. Crim. App. April 24, 2019). Petitioner did not seek certiorari review by filing a petition with the United States Supreme Court.

Petitioner filed his federal habeas petition on July 10, 2019.[2] (ECF 3). Respondent filed an Answer with Brief in Support on September 26, 2019, arguing that Petitioner's claims should be denied, and his petition should be dismissed with prejudice. (ECF 9 at 1–22). Respondent also filed an administrative record on September 26, 2019. (ECF 12). Petitioner filed Petitioner's Objections to the Respondent's Answer on November 19, 2019. (ECF 15).

## III.    PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States because he received ineffective assistance of counsel. (ECF 3 at 6–7). Specifically, Petitioner alleges:

1. Petitioner's trial counsel was ineffective for:

   a. failing to request a jury instruction for any lesser-included offenses of the first-

---

[2] *See Windland v. Quarterman*, 578 F.3d 314, 318 (5th Cir. 2009) (citing *Spotville v. Cain*, 149 F.3d 374, 376–78 (5th Cir. 1998)) (for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system). Petitioner certified that he placed his petition in the prison mail system on July 10, 2019. (ECF 3 at 10).

degree felony offense of aggravated assault on a public servant using a deadly weapon;

b. improperly impeaching Petitioner by using a prior conviction that was over 10 years old; and

c. failing to request an instruction for Petitioner's insanity; and

2. Petitioner's appellate counsel was ineffective for not raising sufficiency of the evidence on appeal.

(*See id.*).

## IV.    STANDARD OF REVIEW

Section 2254 of Title 28 of the United States Code authorizes a federal court to entertain a petition for a federal writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). However, a court may not grant relief on any claim that was adjudicated on the merits in state court proceedings unless a petitioner shows that the prior adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if: (1) the state court arrives

6

at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520–21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable—an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the [Antiterrorism and Effective Death Penalty Act ("AEDPA")] is not whether a federal court believes the state court's determination was incorrect

but whether that determination was unreasonable—a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). "Under the [AEDPA], a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez,* 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to section 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying section 2254(d)'s standards of review). A "paper hearing" is sufficient to afford a full and fair hearing on factual issues, especially where the trial court and state habeas court were the same. *Hill v. Johnson,* 210 F.3d 481, 489 (5th Cir. 2000); *Murphy v. Johnson,* 205 F.3d 809, 816 (5th Cir. 2000).

Furthermore, a denial, even though it does not contain a written opinion, is not silent or ambiguous. *See Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial"

signifies an adjudication on the merits). It is a decision on the merits and is entitled to the federal

statutes' standard of deference. 28 U.S.C. § 2254(d); *see also Neal v. Puckett,* 239 F.3d 683, 686

(5th Cir. 2001) (explaining that in the context of federal habeas proceedings, "adjudication 'on the

merits' is a term of art that refers to whether a court's disposition of the case was substantive").

The Supreme Court has reconfirmed that Section "2254(d) does not require a state court to give

reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*,

562 U.S. at 100. Even if "a state court's decision is unaccompanied by an explanation, the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the state court

to deny relief." *Id.* at 98.

Moreover, "[a] state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Id.* at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). This standard is difficult

to meet, and the Supreme Court has affirmed that "it was meant to be" so. *Id.* at 102.

Finally, the Supreme Court has also held that review under Section 2254(d)(1) is limited

to the record that was before the state court that adjudicated the claim on the merits. *Cullen v.*

*Pinholster,* 563 U.S. 170, 181 (2011). Perhaps more compelling, the Supreme Court made clear

that Section 2254(e)(2)—the statutory mechanism through which Congress limited a petitioner's

ability to obtain a federal evidentiary hearing (and to expand the federal habeas record)—has no

application when a federal court reviews claims pursuant to Section 2254(d), whether or not a

petitioner might meet the technical requirements of section 2254(e)(2). *See id.* at 183–86 (showing

that the Supreme Court explicitly rejected the proposition that Section 2254(d)(1) has no

application when a federal court admits new evidence under Section 2254(e)(2)); *see also id.* at

203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based

on the state-court record . . . [violated § 2254(d)(1),] our analysis is at an end. We are barred from considering the evidence Pinholster submitted in the District Court that he contends additionally supports his claim.") (internal citation omitted). The Supreme Court reasoned:

> Today, we . . . hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.

*Id*. at 185. Therefore, this Court must review the reasonableness of the state court determinations under Section 2254(d), with reference only to the record actually before the state court.

## V.    **MERITS**

As noted above, Petitioner's petition contains four grounds. The first three grounds are that he received ineffective assistance of trial counsel, because his trial counsel: (1) failed to request a jury instruction for any lesser-included offenses of the first-degree felony offense of aggravated assault on a public servant using a deadly weapon; (2) improperly impeaching Petitioner by using a prior conviction that was over 10 years old; and (3) failing to request an instruction for Petitioner's insanity. (*See* ECF 3 at 6–7). The fourth ground is that Petitioner received ineffective assistance of appellate counsel, because his appellate counsel did not raise sufficiency of the evidence on appeal. (*See id.* at 7).

### A. Legal Standard for Ineffective Assistance of Counsel Claims

Claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). First, a petitioner must demonstrate his attorney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under

*Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) ("It is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied.") (quoting *Strickland*, 466 U.S. at 687).

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003).

Second, a petitioner must show his attorney's substandard performance prejudiced him. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. An inquiry into counsel's performance is unnecessary if a petitioner fails to show prejudice. *See Strickland*, 466 U.S. at 697.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of Section 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351–54 (5th Cir. 2010). In other words, under the AEDPA, a federal district court cannot grant a habeas application with respect to an IAC claim that was adjudicated on the merits in state court unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *See id.*; 28 U.S.C. § 2254(d)(1). The AEDPA does not permit a *de novo* review of state counsel's conduct on federal habeas review of IAC claims. *Harrington* at 101–02, 109. Rather, the court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen*, 563 U.S. at 190; *see Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of IAC claims is doubly deferential "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt v. Titlow*, 571 U.S. 12, 15, 22 (2013)). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" but instead "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

Here, Petitioner filed a state habeas application challenging the constitutionality of his first-degree felony offense of aggravated assault on a public servant using a deadly weapon conviction and fifty-year sentence and alleged the exact same claims that are alleged in the instant federal habeas petition. (*See* ECF 3 at 6–7; ECF 12-38 at 27–28). The TCCA denied Petitioner's state habeas application without written order, which constitutes an adjudication of Petitioner's claims

on the merits. (*See* ECF 12-35 at 1); *Ex parte Torres,* 943 S.W.2d at 472. Therefore, this Court's review is limited to whether Petitioner has shown that the TCCA's decision (that Petitioner was not denied effective assistance of trial or appellate counsel) was contrary to, or involved an unreasonable application of, clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1).

### B. Analysis

#### 1. Ground One: Failure to Request Jury Instruction on Lesser-Included Offenses

In his first ground, Petitioner contends that his trial counsel was ineffective for failing to request a jury instruction for any lesser-included offenses of the first-degree felony offense of aggravated assault on a public servant using a deadly weapon. (ECF 3 at 6). Petitioner asserts that evidence existed that would support convictions on lesser crimes, because "he was unaware of his actions due to [an] overdose of prescription drugs, unaware that police were trying to apprehend [him], coupled with multiple taser shots." (*Id.*). Petitioner claims that his trial counsel should have requested a jury instruction on "the less[er]-included offenses of resisting arrest and deadly conduct." (*Id.*).

With respect to a lesser included offense, "[u]nder Texas law, there is a two-step test to determine whether a lesser included offense instruction should be given: first, the lesser included offense must be within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009).

Assuming, without deciding, that the offenses of resisting arrest and deadly conduct are

lesser-included offenses of aggravated assault on a public servant using a deadly weapon,[3] Petitioner cannot show that the record contains some evidence that would permit a jury to rationally find that if Petitioner is guilty, he is only guilty of these lesser-included offenses—and not of aggravated assault on a public servant using a deadly weapon. *See Richards*, 566 F.3d at 568; *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). The evidence in the record, including Officer Thomas's testimony, is sufficient to show that Petitioner is guilty of the first-degree felony offense of aggravated assault on a public servant using a deadly weapon. (*See, e.g.,* ECF 12-7 at 2–3; ECF 12-17 – ECF 12-20).[4]

Accordingly, Petitioner has not shown that the TCCA, through its adjudication of his first IAC claim, issued a decision contrary to or involving an unreasonable application of clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1). Moreover, Petitioner has not overcome the "doubly deferential" standard that must be employed with respect

---

[3] *See generally Rodriguez v. Stephens*, No. 2:12-CV-187, 2014 WL 3058297, at *12 (N.D. Tex. July 7, 2014) ("the elements required to prove deadly conduct are included within the proof necessary to establish the charged offense of aggravated assault of a public servant with a deadly weapon"); *Webb v. Thaler*, No. 2:09-CV-283, 2012 WL 1391648, at *7 (N.D. Tex. Mar. 29, 2012), report and recommendation adopted, No. 2:09-CV-283, 2012 WL 1405678 (N.D. Tex. Apr. 23, 2012) ("In evaluating this ground of error, the Court first notes it is debatable whether, under Texas case law, resisting arrest is considered a lesser included offense of assault on a public servant.").

[4] Under Section 22.01 of the Texas Penal Code, a person commits the offense of assault if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code § 22.01. A person commits the offense of aggravated assault if the person commits the offense of assault and the person:

(1) causes serious bodily injury to another, including the person's spouse; or
(2) uses or exhibits a deadly weapon during the commission of the assault.

Tex. Penal Code § 22.02(a). An aggravated assault offense under Section 22.02 is a second-degree felony; however, the offense is a first-degree felony if "the offense is committed . . . against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty . . . ." Tex. Penal Code § 22.02(b)(2)(B).

14

to ineffective assistance of counsel claims. *See Cullen*, 563 U.S. at 190. The Court should deny Petitioner's first ground.

### 2. Ground Two: Improper Impeachment Using a Prior Conviction

In his second ground, Petitioner asserts that his trial counsel was ineffective for impeaching him with a conviction for "child endangerment" that was over 10 years old. (ECF 3 at 6). Petitioner asserts that he was prejudiced by mentioning this conviction, because his prior conviction "was character evidence to support the State's theory that . . . Petitioner's lack of concern for life . . . endanger[ed] the life of the arresting officer." (*Id.*).

During trial, Petitioner's counsel raised on direct examination of Petitioner that he had multiple prior convictions, including a "felony" conviction for "child endangerment" "with inhalants." (ECF 12-19 at 162–63). Under Rule 609(b) of the Texas Rules of Evidence, a witness's "conviction is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b). Rule 609(b) only "applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Tex. R. Evid. 609(b).

First, Respondent contends that Petitioner has not shown how Petitioner's trial counsel's "decision to proactively talk about these prior convictions, when the state prosecutor would mostly likely bring, or attempt to bring, them up on cross-examination, was not reasoned trial strategy." (ECF 9 at 17–18). Respondent asserts that Petitioner's trial counsel made a legitimate strategic choice by "[l]essening the blow of a client's extensive criminal history[.]" (*Id.* at 18). Second, Respondent argues that Petitioner has not shown that Petitioner's trial counsel's alleged deficiencies prejudiced his case. (*Id.*). Respondent contends that even if Petitioner's trial counsel was deficient by bringing up Petitioner's prior convictions that were more than 10 years old, there

was more than enough evidence to support Petitioner's convictions. (*Id.*).

The Court agrees with Respondent. Petitioner has not shown that more than 10 years have passed since his conviction for "endangering a child" or release from confinement for it. *See* Tex. R. Evid. 609(b). Petitioner has also failed to show that his trial counsel's decision to ask Petitioner about his prior convictions was not a reasoned trial strategy. *See Strickland*, 466 U.S. at 687–88. Petitioner has not demonstrated that his attorney erred in a way that was "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment[.]" *Buck*, 137 S. Ct. at 775 (quoting *Strickland*, 466 U.S. at 687). Finally, while Petitioner argues that this evidence concerning his prior conviction "was character evidence to support the State's theory that . . . Petitioner's lack of concern for life . . . endanger[ed] the life of the arresting officer," Petitioner has not shown that he was prejudiced by his trial counsel's alleged deficiencies such that he was denied a fair trial. (*See* ECF 3 at 6); *Strickland*, 466 U.S. at 687.

Therefore, Petitioner has not shown that the TCCA, through its adjudication of second IAC claim, issued a decision contrary to or involving an unreasonable application of clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1). Moreover, Petitioner has not overcome the "doubly deferential" standard that must be employed with respect to ineffective assistance of counsel claims. *See Cullen*, 563 U.S. at 190. The Court should deny Petitioner's second ground.

### 3. Ground Three: Failure to Request Jury Instruction on Alleged Insanity

In his third ground, Petitioner contends that his trial counsel was ineffective for failing to request a jury instruction regarding his alleged insanity. (ECF 3 at 7). Petitioner contends that the facts surrounding the incidents on August 4, 2004, including that "Petitioner locked himself in a public bathroom while attempting an overdose on his prescription anti-depressant medication,"

supported a defense of insanity at trial. (*Id.*).

Under Section 8.01(a) of the Texas Penal Code, "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Penal Code § 8.01(a). "The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the defense, and the defendant must prove the affirmative defense by a preponderance of the evidence." *Mays v. Dir., TDCJ-CID*, No. 6:11-CV-135, 2013 WL 6677373, at *16 (E.D. Tex. Dec. 18, 2013) (citing Tex. Penal Code § 20.4(b)-(c)); *see Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986) ("An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law.") (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Respondent argues that "insanity as a line of defense was not available" to Petitioner, because Petitioner "testified that he knew the difference between right and wrong." (ECF 9 at 16). Further, Respondent contends that Petitioner's trial counsel made strategic decisions to "persuade the jury that [Petitioner's] mental state and the fact that he swallowed a bottle of pills clouded his judgment," and "also attempted to reference [his] mental state during his direction examination[.]" (*Id.*).

The Court agrees with Respondent. Petitioner "has not presented any evidence to this Court, nor is there any evidence found in the record, that he would have been found not guilty by way of insanity[.]" (*See id.* at 17); *Mays*, 2013 WL 6677373, at *16–*18. Petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness when his trial counsel did not move for a jury instruction on Petitioner's alleged insanity. *See Strickland*, 466 U.S. at 687–88.

Petitioner has not shown that the TCCA, through its adjudication of third IAC claim, issued

a decision contrary to or involving an unreasonable application of clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1). Moreover, Petitioner has not overcome the "doubly deferential" standard that must be employed with respect to ineffective assistance of counsel claims. *See Cullen*, 563 U.S. at 190. The Court should deny Petitioner's third ground.

### 4. Ground Four: Failure to Raise Sufficiency of the Evidence on Appeal

In his fourth ground, Petitioner asserts that his appellate counsel was ineffective for failing to raise legal sufficiency of the evidence on direct appeal. (ECF 3 at 7). Specifically, Petitioner contends that his appellate counsel should have argued that the "knife alleged to [have] been used in [the] assault . . . was dull" and thus could not have been a deadly weapon. (*Id.*).

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989); *see also Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). When determining which issues to raise on appeal, [i]t is counsel's duty to choose among potential issues, according to his or her judgment as to their merits and the tactical approach taken." *Billiot v. Lumpkin*, No. 4:20-CV-118-O, 2020 WL 5106727, at *8 (N.D. Tex. Aug. 28, 2020) (citing *Jones v. Barnes*, 463 U.S. 745, 749 (1983)). "In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness." *Brooks v. Quarterman*, No. 3:08-CV-1001-P, 2009 WL 151246, at *3 (N.D. Tex. Jan. 20, 2009) (citing *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000)); *see Strickland*, 466 U.S. at 687.

When reviewing the legal sufficiency of the evidence, the court must determine if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pilon v. Bordenkircher*, 444 U.S. 1, 2 (1979) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Such review is

18

"highly deferential to the verdict," as the jury is the judge of the facts, and it "is free to choose among all reasonable constructions of the evidence." *United States v. Elashyi*, 554 F.3d 480, 491 (5th Cir. 2008); *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995). The court's review is "limited to whether the jury's verdict was reasonable, not whether [the court] believes it to be correct." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001).

The Texas Penal Code defines a deadly weapon as "a firearm or anything manifestly designated, made, or adapted for the purpose of inflicting death or seriously bodily injury," or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). The TCCA has held that "objects used to threaten deadly force are in fact deadly weapons . . . . The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Factors used to consider whether an object is a deadly weapon include: "words and other threatening actions by the defendant, including the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used the weapon." *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017).

Respondent states that "the only evidence that the knife used during the assault was dull came from the testimony of [Petitioner] and his girlfriend," Jessica Brown. (ECF 9 at 21; *see* ECF 12-19 at 63–64, 147). However, Petitioner also testified that, while he was locked in the bathroom, he attempted to commit suicide by cutting himself with the knife. (ECF 12-19 at 147–48). On cross-examination, Ms. Brown admitted that regardless of how dull the knife was, if someone took a couple steps toward her with the knife, she would be scared for her life. (*Id.* at 105).

During trial, Officer Shawn Jones identified State's Exhibit 10 as the knife Petitioner used. (ECF 12-18 at 171–72). Officer Thomas described the knife as large and that, based on his training and experience, it was a deadly weapon. (*Id.* at 47–48). Lieutenant Michael Miller testified that if someone pointed a knife at him and came toward him, he would believe the person would want to do him harm and that he would consider that knife a deadly weapon. (ECF 12-19 at 43).

Petitioner's claim that his appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim on appeal as to whether the knife used in the assault was a deadly weapon is refuted by the record. Petitioner has not shown that had his appellate counsel raised this claim, he would have prevailed on appeal, because a rational jury could have found beyond a reasonable doubt that the knife used in the assault was a deadly weapon. *See Pilon*, 444 U.S. at 2; *Jackson*, 443 U.S. at 319. It therefore follows that Petitioner's appellate counsel was not deficient for failing to raise sufficiency of the evidence on direct appeal. *See Strickland*, 466 U.S. at 687; *Phillips*, 210 F.3d at 348.

Petitioner has not shown that the TCCA, through its adjudication of fourth IAC claim, issued a decision contrary to or involving an unreasonable application of clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1). Moreover, Petitioner has not overcome the "doubly deferential" standard that must be employed with respect to ineffective assistance of counsel claims. *See Cullen*, 563 U.S. at 190. The Court should deny Petitioner's fourth ground.

## VI.   **RECOMMENDATION**

For the reasons set forth above, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Losaro Sandoval, Jr., a/k/a Lasaro J. Sandoval be

DENIED and that this case be DISMISSED WITH PREJUDICE.

## VII.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions

and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED December 7, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).